SUPPLEMENTAL APPENDIX

1. Respondent's Time-Limits Table

2. Docket Sheet: Commonwealth v. Edwin Rodriguez 9577 CR 638;

3. Docket Sheet: Commonwealth v. Edwin Rodriguez 9577 CR 639

4. Docket Sheet: Commonwealth v. Edwin Rodriguez, 9577 CR 638;

5. Docket Sheet: Commonwealth v. Edwin Rodriguez, 9577 CR 639;

6. Docket Sheet: Commonwealth v. Edwin Rodriguez, 9577 CR 638;

7. Docket Sheet: Commonwealth v. Edwin Rodriguez, 9577 CR 639;

8 - 9. Docket Sheet: Commonwealth v. Edwin Rodriguez SJ-2003-0217

10. Judgment In A Civil Case (C.A. 04-10861-GAO)

5

### Certificate of Service

I hereby certify that a true copy of the above document was served on Edwin Rodriguez, W-63302, M.C.I. - Shirley, P.O. Box 8000, Shirley, MA 01464, by first class mail, postage prepaid, on December 2, 2004.

/s/ Daniel I. Smulow

### Notice of Filing with Clerk's Office

Notice is hereby given that the Respondents' Supplemental Appendix has been manually filed with the Court and is available in paper form only.

/s/ Daniel I. Smulow

Dated: December 2, 2004

## APPENDIX

### PERTINENT EVENTS AND THEIR AFFECTS ON THE STATUTE OF LIMITATIONS

| Event | Date | Countable Days | Total Days |
|---|---|---|---|
| Petitioner Convicted | 09.22.1997 | 0 | 0 |
| Supreme Judicial Court Affirms Convictions | 06.22.2000 | 0 | 0 |
| Time to Seek *Certiorari* Expires | 09.20.2000 | 0 | 0 |
| Petitioner Files New Trial Motion | 12.29.2000 | 100 | 100 |
| New Trial Motion Denied | 01.08.2001 | 0 | 100 |
| Petitioner Moves to Amend New Trial Mot. | 04.09.2001 | 91 | 191 |
| Motion to Amend Denied | 04.17.2001 | 0 | 191 |
| **Statute of Limitations Expires** | **10.08.2001** | **174** | **365** |
| Petitioner Files Habeas Corpus Petition | 04.29.2004 | | Time Barred |

S.A. 1

COMMONWEALTH
OF
MASSACHUSETTS
ESSEX, SS.
SUPERIOR COURT
CRIMINAL
DOCKET

COMMONWEALTH VS. EDWIN RODRIGUEZ

9577CR 638

OFFENSE: Murder, Chap. 265, sec. 1

PLACE: Lawrence

SURETY AND AMOUNT:

PROSECUTOR: Milton Cranney, A.D.A., Museum Place, 1 East India Sq. Mall, Salem 01970

COUNSEL: Committee for Public Counsel Services, 1 Salem Green, Salem 01970
Peter M. Onek, Esq., CPCS, 470 Atlantic Avenue, Suite 700, Boston, MA. 02210 (Appointed)

JUSTICE DISPOSING OF CASE: Welch, J.

| 19 95 | | |
|---|---|---|
| Mar. 8 | 1 | INDICTMENT returned. |
| March 8 | | Copy of Indictment and Order of Court under General Laws, Chapter 277, section 65, furnished Sheriff for service on defendant. |
| | 2 | Notice of return of Indictment and copy of Indictment sent to Administrative Justice under General Laws, Chapter 212, section 7. |
| | 3 | Notice of return of Indictment and copy of Indictment sent to Attorney General under General Laws, Chapter 212, section 7. |
| March 27 | 4 | Habeas Corpus issued to Bridgewater State Hospital for March 31, 1995. |
| March 31 | | Milton Cranney, Assistant District Attorney appears for the Commonwealth. |
| | 5 | Lawrence J. McGuire, Esq., appointed and appears for the defendant. |
| | 6 | Defendant ordered held without bail. Set without prejudice. |
| | 7 | Order of Commitment of a Defendant for Observation (Under Section 15 (b), Chapter 123, General Laws) Continued to April 20, 1995. |
| April 4 | | Cratsley,J. presiding; A.Green, Court Stenographer. Continued to April 20, 1995. |
| April 20 | 8 | Cratsley,J. presiding; D.Doliber, Court Stenographer Habeas Corpus issued to Bridgewater State Hospital for April 20, 1995. Continued to May 4, 1995. |
| | | Cratsley,J. presiding; B.Vega, Court Stenographer |
| April 25 | 9 | Impounded Records from Bridgewater State Hospital Received. |
| | 10 | Habeas Corpus issued to Bridgewater State Hospital for May 4, 1995; |

COMMONWEALTH OF MASSACHUSETTS
ESSEX, SS.
SUPERIOR COURT
CRIMINAL DOCKET

9577CR 639

COMMONWEALTH VS. EDWIN RODRIGUEZ

| | |
|---|---|
| OFFENSE: | Armed Assault in a Dwelling, Chap. 265, sec. 18A. |
| | PLACE: Lawrence |
| SURETY AND AMOUNT: | Personal |
| PROSECUTOR: | Milton Cranney, A.D.A., Museum Place, 1 East India Sq. Mall, Salem 01970 |
| COUNSEL: | Committee for Public Counsel Services, 1 Salem Green, Salem 01970 |
| | Peter M. Onek, Esq., CPCS, 470 Atlantic Avenue, Suite 700, Boston, MA. 02210 (Appointed) |
| JUSTICE DISPOSING OF CASE: | Welch, J. |

| | | INDICTMENT FILED: |
|---|---|---|
| 19 95 Mar. 8 | 1 | Milton Cranney, Assistant District Attorney appears for the Commonwealth. |
| | | Lawrence J. McGuire, Esq., appointed and appears for the defendant. See |
| March 31 | | 5 in 95CR 638 |
| | | Court enters Plea of Not Guilty. |
| | | Defendant ordered to recognize personal. |
| | | Continued to April 20, 1995. |
| April 4 | | Cratsley,J. presiding: A.Green, Court Stenographer. |
| | | Continued to April 20, 1995. |
| April 20 | | Cratsley,J. presiding: D.Dollber, Court Stenographer |
| | | Continued to May 4, 1995. |
| April 20 | | Cratsley,J. presiding: B.Vega, Court Stenographer |
| | | Continued to May 4, 1995 |
| May 4, | | Cratsley,J.Presiding: D.Dollber, Court Stenographer |
| | | Continued to May 10, 1995 at 2 P.M. |
| May 10 | | Borenstein,J. presiding: A.Green, Court Stenographer |
| | | Continued to May 17, 1995. |
| May 17 | | Borenstein,J. presiding: A.Green, Court Stenographer |
| | | Continued to June 23, 1995 |
| May 23 | | Borenstein,J. presiding: A.Green, Court Stenographer |
| | | Order of Commitment of a Defendant. See #12 in 95CR 638 |
| | | Under Section 16(b) and Section 16(c) of Chapter 123, General Laws |
| | | Continued to November 20, 1995 |

| 1997 | | |
|---|---|---|
| Sept 16 | 68 | Motion to be Free of Handcuffs and Shackles -ALLOWED. |
| | 69 | Commonwealth's Prospective Witness List filed. |
| | 70 | Witnesses filed. |
| | 71 | Motion in Limine to Exclude Evidence of Defendant's Prior Convictions filed. |
| | 72 | Request for Instruction on Alleged Past Abuse filed. |
| | 73 | Motion for Voir Dire of Defendant's Statements -after hearing DENIED. See Endorsement. |
| | 74 | Motion to Propound Questions to Prospective Jurors filed. |
| | 75 | Commonwealth's Motion for a View -ALLOWED. |
| Sept 17 | | Welch, J., presiding: M. Hezekiah, Court Stenographer |
| | 76 | Jury Trial Continues. |
| | 77 | Commonwealth's Motion in Limine Concerning Machete -ALLOWED. |
| | | Commonwealth's Motion in Limine Regarding Evidence of Previous Spousal Abuse -after hearing, this motion ALLOWED for the reasons set forth on the record. SEE Commonwealth vs. Seabrooks, 425 Mass. 507, 512 (1997) |
| | 78 | Commonwealth's Motion in Limine Concerning out of Court Statements of the Victim - after hearing, this Motion ALLOWED. See Endorsement. |
| | 79 | Motion for Voir Dire of Proposed Expert Witnesses -ALLOWED in part to the two (2) chemists only. |
| | 80 | Motion in Limine - Prior Bad Acts. See Endorsement. |
| | 81 | Motion in Limine Concerning Consciousness of Guilt Evidence -After hearing DENIED. |
| Sept 18 | | Welch, J., presiding: M. Hezekiah, Court Stenographer |
| | 82 | Jury Trial Continues. |
| | | Application for Issuance and Service of Indigent's Summonses -ALLOWED as to Mr. Colon and Reserved on Officer Flores. |
| Sept 19 | | Welch, J., presiding: M. Hezekiah, Court Stenographer |
| | | Jury Trial Continues. |
| Sept 22 | 83 | Welch, J., presiding: M. Hezekiah, Court Stenographer |
| | | Motion in Limine to Exclude Photographs -ALLOWED in part, Denied in part. See Record for Reason. |
| | 84 | Motion for Required Finding of Not Guilty or in the Alternative a New Trial filed. |
| | 85 | Motion for Required Finding of Not Guilty at Close of Commonwealth's Case -DENIED. |
| | 86 | Motion for Instruction on "State of Mind" Evidence filed. |
| | 87 | Request for Jury Instructions filed. |
| | | Trial Sent to Jury for Deliberation. |
| | 88 | VERDICT: GUILTY Murder-First Degree. |
| | 89 | SENTENCE: Life, committed to Massachusetts Correctional Institution, Cedar Junction. |
| | | Credit of 573 days. |
| | 90 | Victim/Witness Assessment $120.00. |

(Continued to Page Four)

| 1997 | | |
|---|---|---|
| Sept 17 | | Motion in Limine Concerning Machete -ALLOWED. See #76 in 95CR 638. Commonwealth's Motion in Limine Regarding Evidence of Previous Spousal Abuse after hearing, this motion ALLOWED for the reasons set forth on the record. SEE Commonwealth vs. Seabrooks, 425 Mass. 507, 512 (1997). See #77 in 95CR 638. Commonwealth's Motion in Limine Concerning Out of Court Statements of the Victim, after hearing, this motion ALLOWED. See Endorsement. See #78 in 95CR 638. Motion for Voir Dire of Proposed Expert Witnesses ALLOWED in part to the two (2) chemists only. See #79 in 95CR 638. |
| Sept 18 | | Motion in Limine - Prior Bad Acts See Endorsements. See #80 in 95CR 638. Motion in Limine Concerning Consciousness of Guilt Evidence after hearing DENIED. See #81 in 95CR 638. Welch, J., presiding; M. Hezekiah, Court Stenographer Jury Trial Continues. Application for Issuance and Service of Indigent's Summonses ALLOWED as to Mr. Colon and Reserved on Officer Flores. See #82 in 95CR 638. |
| Sept 19 | | Welch, J., presiding: M. Hezekiah, Court Stenographer Jury Trial Continues. |
| Sept 22 | | Welch, J., presiding; M. Hezekiah, Court Stenographer Motion in Limine to Exclude Photographs -ALLOWED in Part, DENIED in part. See Record for Reason. See #83 in 95CR 638. Motion for Required Finding on Not Guilty or in the Alternative a New Trial filed. See #84 in 95CR 638. Motion for Required Finding of Not Guilty at Close of Commonwealth's Case DENIED. See #85 in 95CR 638. Motion for Instruction on "State of Mind" Evidence filed. See #86 in 95CR 638. Request for Jury Instructions filed. See #87 in 95CR 638. Trial Sent to Jury for Deliberation. |
| | 2 | VERDICT: -- Guilty -- Offense as Charged. |
| | 3 | SENTENCE: Ten (10) years to Fifteen (15) years Committed to Massachusetts Correctional Institution, Cedar Junction; Concurrent with 95CR 638; Credit of 573 days. Victim/Witness Assessment $60.00. See #90 in 95CR 638. Notice of Appeal filed. See #91 in 95CR 638. Request for Transcript filed. Copy sent to Appellate. See #92 in 95CR 638. Welch, J., presiding: M. Hezekiah, Court Stenographer |
| | 30 | Request for Transcripts form returned from the Appellate. No additions. See #93 in 95CR 638 |
| Oct 2 | 4 | Notice to M. Hezekiah to prepare Transcripts. See #94 in 95CR 638 CERTIFICATE of First Assistant Clerk re: Order of transcripts. See #95 in 95CR 638 |
| 20 | | Transmitted to the Appellate Division and allparties notified. Peter M. Onek, Esq. appears for the defendant. See #96 in 95CR 638 |

S.A. 5

COMMONWEALTH OF MASSACHUSETTS
ESSEX, SS.
SUPERIOR COURT
CRIMINAL DOCKET

COMMONWEALTH VS. EDWIN RODRIGUEZ

No. CR-9577CR 639
PAGE 4

| Date | Entry |
|---|---|
| 1998 Mar 6 | Transcript received (1 volume dated 9/16/97) from Mary K. Hezekiah, Court stenographer. See #97 in 95CR 638 |
| May 26 | Transcript received (1 volume dated 9/17/97) from Mary K. Hezekiah, Court Stenographer. See #98 in 95CR 638. |
| Aug 25 | Victim/Witness Assessment $60.00 Received. See #99 in 95CR-638. |
| ** May 26 | Notice from the Appellate Division dated July 29, 1998 Re: withdrawal of petition for review of sentence. See #100 in 95CR 638 |
| 1999 Jan 7 | Transcript (1 volume dated 9/18/97) received from M.K. Hezekiah, Court stenographer. See #100 in 95CR 638 |
| Feb 24 | Transcripts (2 volumes dated 10/19, and 10/22 of 1997) received from H. Hezekiah, Court stenographer. See #101 in 95CR 638 |
| April 13 | CERTIFICATE: Receipt of transcripts (5 volumes) from the D.A's Office. See #102 in 95CR 638 |
| AUG 18 | CERTIFICATE: Receipt of transcripts (5 volumes) from CPCS. See #103 in 95CR 638 |
| June 27 | NOTICE OF ASSEMBLY OF RECORD AND TRANSCRIPTS OF APPEAL TRANSMITTED TO THE SUPREME JUDICIAL COURT. SEE 104 IN 9577CR 638 |
| 2000 July 25 | Notice from the Suprean Judicial Court Filed. See #105 in 95CR-638    (LS) |
| 2000 August 31 | Notice of Denial Of Petition For Rehearing filed. See #106 in 9577CR638. 21, 2000 - The Petition For Rehearing from Supreme Judicial Court dated July considered by the Court and is DENIED. |
| SEPT. 16 | Notice of Docket Entry from Appeals Court dated June 22, 2000 - Judgment Affirmed." Filed.: See #. 107 in 9577 CR 638. mek |
| | SEE COMPUTER ENTRIES |

COMMONWEALTH OF MASSACHUSETTS
ESSEX, SS.
SUPERIOR COURT
CRIMINAL DOCKET

COMMONWEALTH VS. EDWIN RODRIGUEZ

9577 No. CR-638
PAGE 4

| Date | No. | Entry |
|---|---|---|
| 1997 Sept 22 | 91 | Notice of Appeal filed. |
| | 92 | Request for Transcript filed. Copy to Appellate. |
| 30 | 93 | Request for Transcripts form returned from the Appellate. No additions. Welch, J., presiding; M. Hezekiah, Court Stenographer |
| | 94 | Notice to M. Hezekiah to prepare Transcripts |
| Oct 20 1998 | 95 | CERTIFICATE of First Assistant Clerk re: Order of transcripts |
| | 96 | Peter M. Onek, Esq. appears for the defendant |
| Mar 6 | 97 | Transcript received (1 volume dated 9/16/97) from Mary K. Hezekiah, Court stenographer. |
| 17 | 98 | Transcript received (1 volume dated 9/17/97 from Mary K. Hezekiah, Court Stenographer |
| May 26 | 99 | Victim/Witness Assessment $120.00 Received. |
| | 100 | Transcript (1 volume dated 9/18/97) received from Mary K. Hezekiah, Court stenographer. |
| 1999 Jan 7 | 101 | Transcripts (2 volumes dated 10/19, and 10/22 of 1997) received from H. Hezekiah, Court stenographer. |
| Feb 24 | 102 | CERTIFICATE: Receipt of transcripts (5 volumes) from the D.A's Office |
| April 13 | 103 | CERTIFICATE: Receipt of transcripts (5 volumes.) From CPCS. |
| AUG. 18 | 104 | NOTICE OF ASSEMBLY OF RECORD AND TRANSCRIPTS OF APPEAL TRANSMITTED TO THE SUPREME JUDICIAL COURT. |
| June 27 | 105 | Notice from the Supream Judicial Court Filed.  (1S) |
| 2000 July 25 | 106 | Notice of Denial Of Petition for Rehearing from Supreme Judicial Court dated July 21, 2000 - The Petition for Rehearing filed in the above captioned case has been considered by the court and is DENIED.  nek |
| 2000 Aug 31 | 107 | Notice of Docket Entry from Appeals Court dated June 22, 2000 - Judgment Affirmed. filed. |
| SEPT. 16 | | SEE COMPUTER ENTRIES |

Mass Appellate Courts - Public Case Information

Supreme Judicial Court and Appeals Court of Massachusetts
Public Case Information 

- Home
- Case Search
- Docket Number
- Involved Party
- Attorney Appearance
- Lower Court
- Lower Court Judge
- Court Calendars
- Help & Site Info
- Helpful Links
- Privacy Policy

Bottom >

# SUPREME JUDICIAL COURT
## for Suffolk County
### Case Docket

COMMONWEALTH vs. EDWIN RODRIGUEZ
SJ-2003-0217

### CASE HEADER

| | | | |
|---|---|---|---|
| Case Status | Decided: petition denied | Status Date | 02/26/2004 |
| Nature | Gatekeeper c 278 s 33E | Entry Date | 06/05/2003 |
| Sub-Nature | Mot for New Trial | Single Justice | Cordy, J. |
| TC Ruling | Motion denied | TC Ruling Date | 02/27/2003 |
| SJ Ruling | Relief denied | TC Number | |
| Pet Role Below | Defendant in lower court | Full Ct Number | |
| Lower Court | Essex Superior Court | Lower Ct Judge | Richard E. Welch, III, J. |

### INVOLVED PARTY                    ATTORNEY APPEARANCE

Edwin Rodriguez
Pro Se Defendant/Petitioner

Commonwealth                          Gregory I. Massing, Assistant District Attorney
Plaintiff/Respondent

### DOCKET ENTRIES

| Entry Date | Paper | Entry Text |
|---|---|---|
| 06/05/2003 | | Case entered. |
| 06/05/2003 | #1 | Affidavit of Indigency filed. |
| 06/05/2003 | #2 | Motion To Waive Fees And Costs Pursuant To M.G.L.A. c. 261 s 29, filed by Edwin Rodriguez, Pro Se with attached Certificate of Service. |
| 06/05/2003 | | Filing fee waived. (Per ges) |
| 06/05/2003 | #3 | Petition For Leave To Appeal Pursuant To Mass. G.L. c. 278 s 33E, filed by Edwin Rodriguez, Pro Se with Attachments. |
| 06/05/2003 | #4 | Memorandum Of Law in Support Of Petition For Leave To Appeal Pursuant To Mass. G.L. c. 278 s 33E, filed by Edwin Rodriguez, Pro Se. |
| 06/05/2003 | #5 | Motion To Stay Proceedings, filed by Edwin Rodriguez, Pro Se with Attachment. |
| 06/05/2003 | #6 | Motion For New Trial Pursuant To Mass. R. Crim. P. 30(b), filed by Edwin Rodriguez, Pro Se. |
| 06/05/2003 | #7 | Memorandum Of Law In Support Of Motion For New Trial, filed by Edwin Rodriguez, Pro Se. |
| 06/05/2003 | #8 | Affidavit In Suport Of Motion For New Trial, filed by Edwin Rodriguez, Pro Se. |
| 06/05/2003 | #9 | Motion For Leave To Amend Or Supplement New Trial Motion, Rodriguez, Pro Se. |

Case 1:04-cv-10861-GAO    Document 15-2    Filed 01/30/2006    Page 10 of 19

| | | |
|---|---|---|
| 06/05/2003 | #10 | Motion For Appointment of Counsel Pursuant To Mass. R. Crim. P. 30(c)(5), filed by Edwin Rodriguez, Pro Se. |
| 06/05/2003 | #11 | Affidavit in Support Of Motion For Appointment Of Counsel, filed by Edwin Rodriguez, Pro Se. |
| 06/05/2003 | #12 | Certificate of service of paper #'s 1-11, filed by Edwin Rodriguez, Pro Se. |
| 07/10/2003 | #13 | NOTICE: Effective July 21, 2003, the Clerk's Office of the Supreme Judicial Court for Suffolk County will be relocated to One Beacon Street, 4th Floor, Boston, MA 02108. Please note that the telephone numbers and facsimile numbers will remain the same. |
| 08/04/2003 | #14 | Letter to Maura S. Doyle, Clerk from Edwin Rodriguez, pro se stating "...Could you please unstay the Motion to Stay Appellate Proceedings..." |
| 10/21/2003 | #15 | Letter to Lillian Andruszkiewicz from Atty Donald Bronstein saying..."You have inquired as to whether CPCS intends to assign counsel for the defendant in the above-referenced matter. Because the defendant has no automatic right to counsel in this matter, it is CPCS policy to assign the matter to a private attorney on our post-conviction panel to review and make a recommendation as to whether we should assign counsel. Pursuant to Mr. Rodriguez' previous direct request to CPCS for assignment of counsel, CPCS has already followed this procedure in this matter. Mr. Rodriguez has already been informed by CPCS that we will not assign counsel on his behalf....." |
| 02/09/2004 | #16 | Commonwealth's Opposition to Defendant's "Gatekeeper" Petition for Leave to Appeal filed by ADA Gregory Massing with certificate of service. |
| 02/26/2004 | #17 | ORDER DENYING LEAVE TO APPEAL: ..."The defendant's application pursuant to G.L. c. 278, s. 33E for leave to appeal from the denial of defendant's motion for new trial, is denied." (Cordy, J.) |
| 02/26/2004 | #18 | Notice to counsel, regarding paper number 17 filed. |

&lt; Top                                                           As of 05/06/2004 01:01

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

EDWIN RODRIGUEZ  
    Petitioner

v.    CIVIL ACTION NO. 04-10861-GAO

COMMONWEALTH OF MASSACHUSETTS  
    Respondent

## JUDGMENT IN A CIVIL CASE

O'TOOLE, D.J.

☐ **Jury Verdict.** This action came before the court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☒ **Decision by the Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED**

The respondent filed a motion to dismiss on December 2, 2004, arguing that the petition is time-barred. The petitioner sought and received additional time to respond to the motion to dismiss, but has not filed a response. Accordingly, the unopposed motion is GRANTED, and the petition shall be dismissed as time-barred.

Dated: 7/29/05

SARAH A. THORNTON,  
CLERK OF COURT

By: PAUL S. LYNESS  
    Deputy Clerk

(JudgementCivil.wpd - 3/7/2005)

S.A. 10

731 N.E.2d 71, 431 Mass. 804, Com. v. Rodriguez, (Mass. 2000)

*71 731 N.E.2d 71

**431 Mass. 804**

Supreme Judicial Court of Massachusetts,
Essex.

COMMONWEALTH,
v.
Edwin RODRIGUEZ.

No. SJC-08105.
June 22, 2000.

Defendant was convicted following jury trial in the Essex Superior Court Department, Richard E. Welch, III, J., of murder in the first degree in connection with fatal stabbing of woman with whom defendant had lived and fathered children. The Supreme Judicial Court, Abrams, J., held that: (1) attempted use of nine straight peremptory challenge to exclude female prospective juror established prima facie case of excluding jurors solely on basis of gender; (2) explanation that defendant did not like the looks of ninth female potential juror against whom counsel attempted to exercise peremptory challenge was inadequate group-neutral reason; and (3) evidence concerning defendant's discovery of victim's infidelity did not support voluntary manslaughter instruction.

Judgment affirmed.

West Headnotes

[1] Jury ⚖➝33(5.15)
230 Right to Trial by Jury
230II Right to Trial by Jury
230k30 Denial or Infringement of Right
230k33 Constitution and Selection of Jury
230k33(5) Challenges and Objections
230k33(5.15) Peremptory Challenges.

Peremptory challenges cannot be used to exclude members of discrete groups from jury solely on the basis of bias presumed to derive from that individual's membership in the group.

[2] Jury ⚖➝33(5.15)
230 Right to Trial by Jury
230II Right to Trial by Jury
230k30 Denial or Infringement of Right
230k33 Constitution and Selection of Jury
230k33(5) Challenges and Objections

© 2005 Thomson/West. No claim to original U.S. Govt. works.

[3] Criminal Law ⚖➝1144.8

110 ----
110XXIV Review
110XXIV(M) Presumptions
110k1144 Facts or Proceedings Not Shown by Record
110k1144.8 Selection and Impaneling of Jury.

In reviewing the denial of a peremptory challenge, Supreme Judicial Court begins with the assumption that the exercise of a peremptory challenge was proper; that assumption is rebuttable, however, on a showing that (1) there is a pattern of excluding members of a discrete group and (2) it is likely that individuals are being excluded solely on the basis of their membership within this group.

[4] Jury ⚖➝33(5.15)
230 ----
230II Right to Trial by Jury
230k30 Denial or Infringement of Right
230k33 Constitution and Selection of Jury
230k33(5) Challenges and Objections
230k33(5.15) Peremptory Challenges.

In determining whether to deny a peremptory challenge of prospective juror, judge is required to make a finding as to whether an initial prima facie showing of impropriety was established and specifically to determine whether the reasons advanced by the exercising party were bona fide or a mere sham.

[5] Jury ⚖➝33(5.15)
230 ----
230II Right to Trial by Jury
230k30 Denial or Infringement of Right
230k33 Constitution and Selection of Jury
230k33(5) Challenges and Objections
230k33(5.15) Peremptory Challenges.

Trial judge implicitly recognized a prima facie showing of impropriety in defendant's exercise of peremptory challenges by finding a pattern of excluding women based on gender only and by requiring defense counsel to explain his reasons for challenging female jurors, and therefore burden shifted to defense counsel to provide a group-neutral reason

© 2005 Thomson/West. No claim to original U.S. Govt. works.

EXHIBIT 1

731 N.E.2d 71, 431 Mass. 804, Com. v. Rodriguez, (Mass. 2000)

Page 2

for the challenge.

[6] Jury ⚖️33(5.15)
230 ----
230II Right to Trial by Jury
230k30 Denial or Infringement of Right
230k33 Constitution and Selection of Jury
230k33(5) Challenges and Objections
230k33(5.15) Peremptory Challenges.

Group-neutral reason for peremptory challenge of prospective juror need not be as specific as that required to justify removal for cause, but general assertions are insufficient; rather, challenging party must give clear and reasonably specific explanation of his legitimate reasons for exercising challenge, and these reasons must be personal to juror and not based on juror's group affiliation.

[7] Jury ⚖️33(5.15)
230 ----
230II Right to Trial by Jury
230k30 Denial or Infringement of Right
230k33 Constitution and Selection of Jury
230k33(5) Challenges and Objections
230k33(5.15) Peremptory Challenges.

Defense counsel's explanation for attempting to use ninth straight peremptory challenge to exclude a prospective female juror, that defendant "does not like her looks," was not a sufficient group-neutral reason for the strike in murder prosecution arising from fatal stabbing of woman with whom defendant had lived and fathered children; explanation did not describe qualities particular to prospective juror, but could have been made about every woman.

[8] Jury ⚖️33(5.15)
230 ----
230II Right to Trial by Jury
230k30 Denial or Infringement of Right
230k33 Constitution and Selection of Jury
230k33(5) Challenges and Objections
230k33(5.15) Peremptory Challenges.

Trial judge made sufficient finding that defense counsel's explanation for using ninth straight peremptory challenge to exclude prospective female juror was inadequate; while judge failed to use term "sham" or "pretext" to characterize explanation that defendant did not like juror's looks, judge stated that explanation "doesn't cut the mustard" and that it was

not "a legitimate basis."

[9] Jury ⚖️33(5.15)
230 ----
230II Right to Trial by Jury
230k30 Denial or Infringement of Right
230k33 Constitution and Selection of Jury
230k33(5) Challenges and Objections
230k33(5.15) Peremptory Challenges.

A judge need not use any particular set of words in making a finding as to the adequacy of a party's group-neutral explanation for exercising a peremptory challenge of prospective juror.

[10] Jury ⚖️33(5.15)
230 ----
230II Right to Trial by Jury
230k30 Denial or Infringement of Right
230k33 Constitution and Selection of Jury
230k33(5) Challenges and Objections
230k33(5.15) Peremptory Challenges.

In denying a peremptory challenge of prospective juror as improperly group-based, trial judge need not use the words "sham" or "pretext" to describe challenging party's group-neutral explanation, but must make it clear that the explanation was inadequate.

[11] Jury ⚖️33(5.15)
230 ----
230II Right to Trial by Jury
230k30 Denial or Infringement of Right
230k33 Constitution and Selection of Jury
230k33(5) Challenges and Objections
230k33(5.15) Peremptory Challenges.

Defendant's use of ninth straight peremptory challenge to attempt to strike a female prospective juror established prima facie case of improperly excluding jurors solely on basis of gender, even though jury venire arguably contained disproportionate number of women and defendant accepted five women on panel; defendant used 100 percent of his challenges to strike women and challenged nine of 14 women who sat as potential jurors while challenging none of the nine male potential jurors.

[12] Criminal Law ⚖️1158(3)
110 ----
110XXIV Review

© 2005 Thomson/West. No claim to original U.S. Govt. works.

731 N.E.2d 71, 431 Mass. 804, Com. v. Rodriguez, (Mass. 2000)

Page 3

110XXIV(O) Questions of Fact and Findings
110k158 *71 In General
110k158(3) Relating to Jury.

Supreme Judicial Court grants deference to a trial judge's ruling on whether a permissible ground for a peremptory challenge has been shown and will not disturb it so long as it is supported by the record.

[13] Homicide 1458

203 ----
203XII Instructions
203XII(C) Necessity of Instruction on Other Grade, Degree, or Classification of Offense
203k1458 Degree or Classification of Manslaughter.

(Formerly 203K309(6))

Evidence did not support voluntary manslaughter instruction in murder prosecution arising from defendant's fatal stabbing of woman with whom he had lived for 22 years; even if defendant had first seen victim with another man on morning of killing, defendant had been suspicious of her activities for several months, and thus attack on victim was not provoked by a sudden discovery of infidelity.

[14] Homicide 681

203 ----
203V Manslaughter
203K681 Infidelity or Unfaithfulness.

(Formerly 203k47)

A killing committed subsequent to the sudden discovery of present spousal infidelity, before a reasonable person would be expected to regain emotional control and before the defendant has regained emotional control, could constitute voluntary manslaughter.

[15] Criminal Law 144.1

110 ----
110XXIV Review
110XXIV(M) Presumptions
110k1144 Facts or Proceedings Not Shown by Record
110k1144.1 In General; Complaint, Warrant, and Preliminary Examination.

(Formerly 203K330)

© 2005 Thomson/West. No claim to original U.S. Govt. works.

[16] Homicide 1455

203 ----
203XII Instructions
203XII(C) Necessity of Instruction on Other Grade, Degree, or Classification of Offense
203k1455 Some, Any, Slight, or Weak Evidence in General.

(Formerly 203K309(6))

If any view of the evidence would permit a verdict of manslaughter rather than murder, a manslaughter charge should be given.

[17] Homicide 669

203 ----
203V Manslaughter
203K666 Sudden Passion or Heat of Passion
203K669 Time for Cooling.

(Formerly 203k47)

[See headnote text below]

[17] Homicide 681

203 ----
203V Manslaughter
203K681 Infidelity or Unfaithfulness.

(Formerly 203k47)

Where the defendant harbored suspicions of victim's infidelity to him for a significant time prior to allegedly learning of victim's infidelity, defendant cannot successfully claim that confirmation of infidelity constituted a sudden discovery so as to reduce killing of victim from murder to voluntary manslaughter.

*73 Eric S. Brandt, Boston, Committee for Public Counsel Services, for the defendant.

Gregory I. Massing, Assistant District Attorney, for the Commonwealth.

Present MARSHALL, C.J., ABRAMS, IRELAND, SPINA & COWIN, JJ.

731 N.E.2d 71, 431 Mass. 804, Com. v. Rodriguez, (Mass. 2000)

Page 4

ABRAMS, J.

The defendant, Edwin Rodriguez, appeals from his conviction of murder in the first degree by deliberate premeditation and by extreme atrocity or cruelty. (FN1) On appeal, he [431 Mass. 805] argues that the judge erred in disallowing his peremptory challenge of the last juror seated on the panel. He also argues that the judge erred in denying his request for a jury instruction on voluntary manslaughter. We affirm the conviction of murder in the first degree. We conclude that there is no reason to grant the defendant a new trial or to enter a verdict of a lesser degree of guilt pursuant to our power under G.L. c. 278, § 33E.

1. *Facts.*

The defendant and the victim, Nydia Vega, lived together in Puerto Rico for twenty-two years. They had four daughters, including Wanda Rodriguez, the eldest. Wanda moved to an apartment in Lawrence, Massachusetts, in the summer of 1994. While visiting Wanda during the summer, the victim met a man and began to spend time with him. In November, 1994, the victim returned to Massachusetts and moved in with Wanda. The victim continued to spend time with the other man after she moved in with Wanda.

On December 1, the defendant went to the apartment with a friend of his. The defendant said that he wanted to get back together with the victim, but the victim said that she no longer wanted to be with the defendant. The defendant became angry and hit the victim. He then approached her with a knife, yelling, "You have to come back to Puerto Rico with me because if you're not going to be mine, you're not going to be nobody elses [sic] either." The defendant's friend held him back and the victim ran from the apartment. She spent the night at her friend Rosa's apartment. The defendant stayed at Wanda's apartment that night.

The next morning, Wanda went to Rosa's apartment. Shortly thereafter, the defendant knocked on Rosa's door and *74 called out the victim's name. Rosa's husband blocked the door and the defendant left. The victim stayed with Rosa for some additional time and then stayed with Rosemarie (FN2) Maldonado until January, 1995. The defendant continued to stay with Wanda. During this time, the defendant would grab the telephone from Wanda when Wanda was speaking with the victim. He began threatening the victim over the telephone. He told her of his suspicions that she was seeing someone else and said that he "was going to take her heart out through her mouth." At some point, the defendant brought a knife home and hid it under

Wanda's bed.

In January, 1995, after the defendant learned where the victim [431 Mass. 806] was staying, Wanda moved the victim to Angela Canel's apartment in Lawrence. Several weeks after the victim moved there, the defendant learned where she was staying from Maldonado. On the morning of February 5, the defendant told Wanda, "I've just seen your mom. Come with me in order to avoid a tragedy." The defendant then took the knife from under Wanda's bed and left the apartment. He encountered an acquaintance, Oscar Nieves, who was walking down the street with his girl friend, Sandra Mercado. The defendant offered Nieves $50 to knock on the door of the apartment where the victim was staying. He did not tell Nieves his intentions. Nieves agreed and the defendant and Nieves drove to the apartment.

The defendant hid as Nieves knocked on the door, and then rushed into the apartment after the door was opened. The defendant banged on the victim's bedroom door and yelled for her to come out. Eventually, he successfully kicked the door open. The victim attempted to run away, but the defendant caught her and began stabbing her. The victim later died as a result of multiple stab wounds.

A neighbor, who had arrived at the apartment minutes before the defendant arrived, ran out to the street for help. Detective Walter Flanagan of the Methuen police department happened to be passing and stopped to assist. Moments later, the defendant ran out of the apartment building, covered with blood. Detective Flanagan radioed for assistance and drove behind the defendant as he ran down the street to his parked car. Detective Flanagan ordered the defendant out of the car.

Subsequently, Officer Melix Bonilla, a Lawrence police officer, arrived and put the defendant in a cruiser to transport him to the police station. In the cruiser, the defendant asked Bonilla whether the victim had died. Bonilla told the defendant that it was in his best interest to stay quiet. Despite this advice, the defendant said, "I don't care if she dies. She was playing me dirty anyways and I hope she does die that way she don't fuck anyone else .... I was a good man. I was giving money for my daughter, look what she did to me. I don't care if the Judge gives me 100 years, at least I can live in peace now that she's dead. I'm not a cabron." (FN3)

At the police station, after being advised of the Miranda [431 Mass. 807] warnings, the defendant gave

© 2005 Thomson/West. No claim to original U.S. Govt. works.

731 N.E.2d 71, 431 Mass. 804, Com. v. Rodriguez, (Mass. 2000)    Page 5

a statement. In his statement, the defendant said that the victim's relationship with the other man "had been going on since last year." He also stated that he had learned the day before the murder that the victim "had an affair going" with another man. (FN4)

*2. Peremptory challenge.*

The defendant argues that the judge erred in disallowing the defendant's peremptory *75 challenge of the last juror seated on the panel. Defense counsel (FN5) had used eight consecutive peremptory challenges to strike women and sought to use his ninth challenge also to strike a woman. The defendant's challenge was denied. The juror was seated and sworn, and participated in the deliberations.

[1][2] "Peremptory challenges cannot be used 'to exclude members of discrete groups solely on the basis of bias presumed to derive from that individual's membership in the group.' *Commonwealth v. Soares,* 377 Mass. 461, 488, 387 N.E.2d 499, cert. denied, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979). Gender is among the group affiliations on which peremptory challenges cannot be based." *Commonwealth v. LeClair,* 429 Mass. 313, 319, 708 N.E.2d 107 (1999). See *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 129, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

[3][4] "We begin with the assumption that the exercise of a peremptory challenge is proper. This assumption is rebuttable, however, on a showing that (1) there is a pattern of excluding members of a discrete group and (2) it is likely that individuals are being excluded solely on the basis of their membership within this group. See *Commonwealth v. Soares,* 377 Mass. 461, 490, 387 N.E.2d 499, cert. denied, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979). See also *Commonwealth v. Hamilton,* 411 Mass. 313, 316, 582 N.E.2d 929 (1991); *Commonwealth v. Wood,* 389 Mass. 552, 561, 451 N.E.2d 714 (1983); *Commonwealth v. Reid,* 384 Mass. 247, 254, 424 N.E.2d 495 (1981)." *Commonwealth v. Curtiss,* 424 Mass. 78, 80, 676 N.E.2d 431 (1997). See *Commonwealth v. Burnett,* 418 Mass. 769, 770, 642 N.E.2d 294 (1994). "The judge is required to make a finding as to whether an initial prima facie showing of impropriety was established and specifically to determine whether the reasons advanced by the exercising party were 'bona fide or a mere sham.' " *Commonwealth v. Curtiss, supra* at 81, 676 N.E.2d 431. See *Commonwealth v. Calderon,* 431 Mass. 21, 26, 725 N.E.2d 182 (2000).

[431 Mass. 808] There was a pattern of excluding women here. (FN6) Initially, defense counsel exercised six peremptory challenges, striking six of the eight women on the jury. The judge noted for the record that all six jurors struck by defense counsel were women, although the prosecutor did not object. After additional jurors were seated, defense counsel exercised his seventh challenge, again striking a woman. The judge then sua sponte moved "to make a finding here that there is a pattern based on gender only women are being struck."

The judge, after finding a pattern of exclusion, required defense counsel to provide a gender-neutral reason for subsequent peremptory challenges of women. Defense counsel used his seventh and eighth challenges to strike women and offered reasons that the judge found to be independent of gender in each case. (FN7) A female juror was then seated. Attempting to use his ninth peremptory challenge, defense counsel informed the court, "on [the defendant's] instructions[,] I challenge this juror. He does not like her looks." The judge did not accept this challenge. The defendant now contends that defense counsel's explanation was group neutral because it was "personal to the juror and not based on the juror's group [membership]." *Parkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). See *Commonwealth v. Green,* 420 Mass. 771, 778, 652 N.E.2d 572 (1995); *Commonwealth v. Lattimore,* 396 Mass. 446, 448, *76 486 N.E.2d 723 (1985). To view preceding link please click here, *S.C.,* 400 Mass. 1001, 507 N.E.2d 754 (1987). We disagree.

[5][6] The judge implicitly recognized a prima facie showing of impropriety by finding a pattern and by requiring defense counsel to explain his reasons for challenging female jurors. See *Commonwealth v. Calderon, supra* at 25, 725 N.E.2d 182; *Commonwealth v. Curtiss, supra* at 82, 676 N.E.2d 431. Given this initial showing, the burden shifted to defense counsel "to provide a group-neutral reason for the challenge." *Commonwealth v. Sarourt Nom,* 426 Mass. 152, 155, 686 N.E.2d 1017 (1997), citing *Commonwealth v. Burnett, supra* at 771, 642 N.E.2d 294. "This reason need not be as specific as that required to justify a removal for cause, but general assertions are insufficient. *Commonwealth v. Soares, supra* at 491, 387 N.E.2d 499. Rather, the challenging party 'must give a "clear and reasonably specific" explanation of his "legitimate reasons" for exercising the challenges.' *Commonwealth* [431 Mass. 809] v. *Burnett, supra, quoting Batson v. Kentucky,* 476 U.S. 79, 98 n. 20, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). These reasons must be 'personal to the juror and not

© 2005 Thomson/West. No claim to original U.S. Govt. works.

731 N.E.2d 71, 431 Mass. 804, Com. v. Rodriguez, (Mass. 2000)

Page 6

based on the juror's group affiliation.' *Commonwealth v. Young*, 401 Mass. 390, 401, 517 N.E.2d 130 (1987)." *Commonwealth v. Sarourt Nom, supra* at 155, 686 N.E.2d 1017.

[7] Defense counsel here did not provide any explanation for his objection that "pertain[ed] to the individual qualities of the prospective juror and not to that juror's group association." *Commonwealth v. Soares, supra* at 491, 387 N.E.2d 499. The defendant's sole explanation that "[the defendant] does not like her looks" does not describe qualities particular to the prospective juror. As the trial judge observed, defense counsel could have made the same statement about every woman. The proffered reason was insufficient. *See, e.g., Commonwealth v. Calderon, supra* at 26-28, 725 N.E.2d 182 (challenge based primarily on juror's husband's occupation inadequate); *Commonwealth v. Burnett, supra* at 770, 642 N.E.2d 294 (challenge based on juror's occupation should not have been accepted as race-neutral).

By contrast, the objecting counsel in *Purkett, Green*, and *Lattimore*, upon which the defendant relies, each offered reasons beyond the prospective juror's looks. *See Purkett v. Elem*, 514 U.S. 765, 769, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (juror challenged because of the juror's long, unkempt hair, mustache, and goatee and because prosecutor did not like the way he looked); *Commonwealth v. Green*, 420 Mass. 771, 778, 652 N.E.2d 572 (1995) (first challenged juror's sister-in-law was shooting victim; second challenged juror's father and brother were Boston police officers); *Commonwealth v. Lattimore, supra* at 448, 486 N.E.2d 723 (one juror challenged because he wore gold earring and because of his looks; second juror challenged "based on the fact that the juror lived with a nephew who had been convicted for carrying a gun"). We conclude that the defendant has not met his burden of providing a group-neutral explanation for the challenge.

[8] The defendant next argues that the judge failed to make an explicit finding that the defendant's explanation was a sham or that the challenge was motivated by discriminatory intent. See *Commonwealth v. Calderon, supra* at 26-27, 725 N.E.2d 182; *Commonwealth v. Curtiss, supra* at 81, 676 N.E.2d 431; *Commonwealth v. Burnett, supra* at 771, 642 N.E.2d 294. Rather, the defendant suggests, the judge issued his ruling while operating under a misunderstanding of the law. Consequently, the defendant contends, the ruling disallowing the challenge should be reviewed without deference. These arguments have no merit.

[9] [431 Mass. 810] A judge need not use any particular set of words in making a finding. *Commonwealth v. Curtiss, supra* at 82, n. 3, 676 N.E.2d 431. In response to defense counsel's attempt to use his ninth peremptory *77 challenge because "[the defendant] does not like her looks," the judge stated: "It's plain here that there has been a pattern of challenges to women. In fact every challenge [by] the [d]efendant has been to women. [Defense counsel] has set forth when asked to two excellent bases for challenging the last two. Unfortunately I think that '[t]he doesn't like her looks['] doesn't cut the mustard for appellate purposes. You could say that about every woman. I suppose, so even though I recognize that this is a first degree murder case that if I was on the [Supreme Judicial Court] I would say the [d]efendant-- I would agree with your statement ... that the [d]efendant should be able to utilize peremptory challenges for discriminatory reasons, but that's not the law as I understand it and therefore I can't accept that challenge." (FN8)

Defense counsel asked that his objection be noted for the record. Though the prosecutor did not object, the judge stated, "I don't think that gets me off the hook unfortunately .... I think it's contrary to the law to allow this use of peremptory challenge, therefore, with reluctance[,] I'm going to deny this use of the peremptory challenge." After additional conversation, the judge explained, "I think once I make the finding [of a pattern] and ... there continues to be a consistent pattern, each and every one after the finding [must] be justified. .... This one, I'm afraid I can't find it's a legitimate basis."

[10] Although the judge did not label defense counsel's explanation either a "sham" or "pretext," he made other statements that were adequate. The judge stated that the explanation "doesn't cut the mustard" and that it was not "a legitimate basis." The judge's remarks, taken as a whole, support a determination that the explanation was insufficient and is entitled to deference. *Commonwealth v. Curtiss, supra* at 82 & n. 4, 676 N.E.2d 431. See *Commonwealth v. LeClair*, 429 Mass. 313, 323, 708 N.E.2d 107 (1999) ( "judge, apparently, determined that [the explanation] was disingenuous" [emphasis added] ). In sum, a judge need not use the words "sham" or "pretext," but must make it clear that the explanation was inadequate.

[11] [431 Mass. 811] Additionally, the defendant contends that the circumstances did not support a finding that the defendant was challenging women solely on the basis of gender. He points to two key

© 2005 Thomson/West. No claim to original U.S. Govt. works.

731 N.E.2d 71, 431 Mass. 804, Com. v. Rodriguez, (Mass. 2000)

Page 7

factors to support this argument. First, he states that the disproportionate number of women challenged may be explained, in part, because the jury venire and the jury panel had disproportionate percentages of women. See *Commonwealth v. LeClair*, supra at 319-321, 708 N.E.2d 107. Second, he argues that his acceptance of five women on the panel rebuts the notion that he was intentionally discriminating against women. See *Commonwealth v. Hyatt*, 409 Mass. 689, 692, 568 N.E.2d 1148 (1991), S. C., 419 Mass. 815, 647 N.E.2d 1168 (1995). We disagree.

[12] The two factors cited by the defendant do not convince us now that his challenge was proper. We grant deference to a judge's ruling on whether a permissible ground for the peremptory challenge has been shown and will not disturb it so long as it is supported by the record. *Commonwealth v. LeClair*, supra at 323, 708 N.E.2d 107. The judge here acknowledged that there were a "large number of women on th[e] jury panel." In addition, he must have been aware that the defendant had not challenged a number of women who remained on the panel. Nevertheless, the judge found that defense counsel did not offer a "legitimate basis" that was gender-neutral for his ninth peremptory challenge.

*78 We conclude that this finding is supported by the record. Defense counsel used one hundred per cent of his challenges to strike women and did not strike any men. Further, defense counsel challenged nine of the fourteen women (sixty-four per cent) who sat as potential jurors while challenging none of the nine men (zero per cent) who sat as potential jurors. See *Commonwealth v. Soares*, 377 Mass. 461, 490, 387 N.E.2d 499 (1979) ("The disproportionate exclusion by the prosecution of ninety-two per cent of the prospective black jurors, as contrasted with thirty-four per cent of the available whites, sufficiently indicated the likelihood that blacks were being challenged because they were black"). See also *Commonwealth v. Hamilton*, 411 Mass. 313, 316-317, 582 N.E.2d 929 (1991) (prosecutor's challenge of sixty-seven per cent of prospective black jurors and fourteen per cent of available white jurors established prima facie showing of impropriety).

### 3. Voluntary manslaughter instruction.

[13] The defendant argues that the judge erred in failing to give a voluntary manslaughter instruction, as trial counsel requested. See *Commonwealth v. Andrade*, 422 Mass. 236, 237-238, 661 N.E.2d 1308 (1996); *Commonwealth v.* [431 Mass. 812] *Schnopps*, 383 Mass. 178, 180-181, 417 N.E.2d 1213 (1981) To

view preceding link please click here , S. C., 390 Mass. 722, 459 N.E.2d 98 (1984). We conclude that there was no error.

[14][15][16] "A killing committed subsequent to the *sudden discovery of present spousal infidelity* ... before a reasonable person would be expected to regain emotional control and before the defendant has regained emotional control, could constitute voluntary manslaughter" (citations omitted). *Commonwealth v. Andrade*, supra at 238, 661 N.E.2d 1308. In deciding whether the judge should have charged on manslaughter, we view the evidence in the light most favorable to the defendant. *Commonwealth v. Emerson*, 430 Mass. 378, 382-383, 719 N.E.2d 494 (1999), cert. denied, 529 U.S. 1030, 146 L.Ed.2d 333 (2000). " 'If any view of the evidence ... would permit a verdict of manslaughter rather than murder, a manslaughter charge should be given.' *Commonwealth v. Brooks*, 422 Mass. 574, 578, 664 N.E.2d 801 (1996)." *Commonwealth v. Berry*, 431 Mass. 326, 334, 727 N.E.2d 517 (2000). See *Commonwealth v. Emerson*, supra.

The defendant's argument that he is entitled to such an instruction is based on two facts: (1) the defendant learned the victim's address at least one day before the murder, but did not go to her at that point; and (2) the defendant saw the victim on the morning of the murder. Given these facts, the defendant concludes, it was inferable that the victim was with another man when the defendant saw her hours before her death, thereby entitling him to a voluntary manslaughter instruction. Assuming that these facts were present, we do not agree that they are sufficient to require an instruction on voluntary manslaughter.

[17] "The evidence presented in this case forecloses a finding that there was" *79, a 'sudden discovery' which provoked the attack on the victim." *Commonwealth v. LeClair*, 429 Mass. 313, 317, 708 N.E.2d 107 (1999). The evidence reveals that the defendant had been suspicious of the victim's activities for several months. "Where the defendant harbored these suspicions for a significant time prior to [allegedly] learning of the victim's infidelity], he cannot successfully claim that [confirmation of this infidelity] constituted a 'sudden discovery.' *Commonwealth v. Brown*, [387 Mass. 220,] 228, 439 N.E.2d 296 [ (1982) ]." *Commonwealth v. LeClair*, supra. There was no error in the denial of the request for a voluntary manslaughter instruction.

### 4. Relief pursuant to G.L. c. 278, § 33E.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

731 N.E.2d 71, 431 Mass. 804, Com. v. Rodriguez, (Mass. 2000)

Page 8

We have considered the entire record on the conviction of murder in the first degree pursuant to our obligation under G.L. c. 278, § 33E. We [431 Mass. 813] conclude that the defendant is not entitled to a new trial or to entry of a lesser degree of guilt.

*Judgment affirmed.*

(FN1.) The defendant also was convicted of armed assault in a dwelling. He does not challenge that conviction on appeal. His sentence on the armed assault in a dwelling runs concurrently with his sentence on murder in the first degree. The case did not go to the jury on a felony-murder theory.

(FN2.) At times, the witness also is referred to as Rosemary.

(FN3.) Officer Bonilla explained that "cabron" was a derogatory word for a married man who knew his wife was having a sexual relationship with another man, but did nothing about it.

(FN4.) Rosemarie Maldonado testified that she told the defendant of the victim's relationship with another man "several days" before the victim's murder.

(FN5.) The defendant is represented by different counsel on appeal.

(FN6.) The defendant concedes this point in his brief.

(FN7.) Defense counsel stated that he was challenging one juror because she was a plaintiff in a harassment and stalking matter in the Superior Court. He objected to the other juror because she was a religious education director.

(FN8.) Our case law is consistent with Federal law. See *Purkett v. Elem*, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *Hernandez v. New York*, 500 U.S. 352, 358-359, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *Batson v. Kentucky*, 476 U.S. 79, 96-98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)

© 2005 Thomson/West. No claim to original U.S. Govt. works.